(260 P.3d 95)
No. 103,262

KEITH SAULS, *Appellant*, v. DAVID MCKUNE, *Appellee*.

Original opinion filed August 27, 2010 (44 Kan. App. 2d 460, 238 P.3d 747). Modified opinion filed May 9, 2011.

*Michael G. Highland*, of Bonner Springs, for appellant.

*Matthew J. Donnelly*, legal counsel, Lansing Correctional Facility, of Lansing, for appellee.

Before LEBEN, P.J., GREEN and CAPLINGER, JJ.

LEBEN, J.: Prison inmates have some due-process rights when prison officials enter disciplinary sanctions against them that take away either liberty or property interests. So Keith Sauls filed a court action challenging the $20 fine and loss of good-time credits entered as a sanction against him for escaping from custody for a brief time. The district court threw out Sauls' suit because it had not been physically served on the Secretary of Corrections within

time limits applicable to most civil lawsuits. But we reverse because that time limit does not apply to prisoner habeas suits under K.S.A. 60-1501 and because Sauls' due-process rights were violated when prison officials refused without an adequate explanation to allow him to call witnesses in his defense.

*The District Court Should Not Have Dismissed Sauls' Lawsuit as Untimely.*

An inmate challenging an action taken against the inmate by the Secretary of Corrections must file a petition for a writ of habeas corpus within 30 days of the Secretary's action. K.S.A. 60-1501(b). In addition, under the prison mailbox rule, a habeas petition is considered filed when it is delivered to prison authorities for mailing—not on the date it is eventually filed with the court clerk—since those prison authorities control what happens after the paper is delivered to them. *Wilson v. State*, 40 Kan. App. 2d 170, 175, 192 P.3d 1121 (2008); *Taylor v. McKune*, 25 Kan. App. 2d 283, 286-88, 962 P.2d 566 (1998); see also *Houston v. Lack*, 487 U.S. 266, 101 L. Ed. 2d 245, 108 S. Ct. 2379 (1988).

Sauls alleged in his petition that he first received notice of the Secretary's action affirming the disciplinary sanction against him on September 23, 2008, and that he gave his habeas petition to prison officials for filing on October 23, 2008. Those facts were accepted by the Secretary of Corrections when he filed a motion to dismiss—and under those facts, the time limit set out in K.S.A. 60-1501(b), and the prison mailbox rule, Sauls' filing was timely.

The district court granted the Secretary's motion to dismiss based on other statutes that apply generally to civil lawsuits but which have no application in habeas petitions under K.S.A. 60-1501. Several procedural steps not called for under K.S.A. 60-1501 may have helped to lead the district court down the wrong path.

Let's start with what is supposed to happen. K.S.A. 60-1501(b) requires only that "an inmate in the custody of the Secretary of Corrections *shall file a petition for writ* [of habeas corpus] . . . within 30 days from the date the action was final." (Emphasis added.) Filing of the petition triggers the district court's duty to review the petition to determine whether it appears to set forth

any claims that may entitle the inmate to relief. K.S.A. 60-1503(a). If the district court determines that the inmate *may* be entitled to relief, the court "shall issue the writ and order the person to whom the writ is directed to file an answer . . . or to take such other action as the judge deems appropriate." K.S.A. 60-1503(a). The statute provides for service of the writ upon the Secretary, K.S.A. 60-1503(c); but no provision requires serving the petition when it is initially filed. Nor does the statute provide for an answer by the Secretary to the petition; an answer is filed to the writ, not to the petition. K.S.A. 60-1504(a).

We turn next to what actually occurred in Sauls' case. Even though service of the petition is not required, the district court sent Sauls a notice of deficient pleading requiring that he send $5 for the sheriff's service fee or the case would be dismissed. That notice was sent *before* the district court conducted the statutorily required review of the petition to determine whether a writ should be entered. For reasons that aren't clear, the fee was apparently sent to the district court clerk but returned to the prison. The court then dismissed the case on the basis that the $3 filing fee for indigent parties hadn't been paid, but it granted reconsideration when it was shown that the $3 had been sent and that a check for the $5 service fee had been returned by the clerk. The court gave Sauls until May 1, 2009, to pay the $5 fee, and he did. The court then issued the writ of habeas corpus on May 6, 2009, directing that an answer be filed within 20 days of service.

But the Secretary did not file the answer called for by the writ and K.S.A. 60-1504; he instead filed a motion to dismiss, contending that the delay that took place between October 2008 (when Sauls gave the petition to prison officials) and May 2009 (when the Secretary received the writ) was so long that the habeas lawsuit should not be considered timely filed. As support for that argument, the Secretary cited K.S.A. 60-203(a), a general provision in the Kansas Rules of Civil Procedure governing when a lawsuit is "commenced."

If this were a normal lawsuit, subject to a traditional statute of limitation determining when the suit must be brought, the Secretary would have a valid point. Most statutes of limitation provide

that an action "shall be brought" within a specific time, *e.g.*, K.S.A. 60-513, so the action must be "commenced" within that time. K.S.A. 60-203(a) provides that an action is commenced when it is filed, but with one significant exception: if service of process isn't obtained within 90 days, then the action is commenced when service occurs. Thus, the Secretary argued that under K.S.A. 60-203(a), Sauls had not brought his action until the Secretary was served in May 2009, well outside the 30-day time limit in K.S.A. 60-1501(b).

The Secretary's argument was accepted by the district court, but the argument ignores the clearly stated time limit in K.S.A. 60-1501(b), which requires not that the action "shall be brought" within a specific time but that the inmate "shall file a petition for writ" within a specific time. Sauls did that. K.S.A. 60-203(a)'s rule about the "commencement" of an action doesn't apply here.

The words of the statute seem clear, but we confirm our reading of it by noting that the result we've reached here also makes sense. The 30-day time limit in K.S.A. 60-1501(b) applies only to inmates in the custody of the Secretary of Corrections. Inmates, because of their status, have limited control of the mailing of their legal papers, the transmittal of filing or service fees, and the service of process. Moreover, the Secretary is not required to file an answer to the petition; an answer is required to the writ, *if* the district court issues one after deciding that the petition shows that the inmate may be entitled to relief. We conclude that the district court erred in dismissing Sauls' petition based on K.S.A. 60-203(a), which does not factor into the determination of whether an inmate's petition has been timely filed under K.S.A. 60-1501(b).

We must address one additional point regarding this issue. The district court had two independent bases for dismissing Sauls' petition: that the action wasn't timely filed and that the disciplinary hearing provided sufficient due process. Surprisingly, even though represented by counsel on appeal, Sauls didn't address the timeliness of his petition. Generally, failing to address an alternative basis for a district court's ruling is a sufficient reason to deny the appeal. See *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 444, 109 P.3d 1146 (2005) (an issue not briefed by the appellant is deemed waived or abandoned); *Greenwood v. Blackjack Cattle*

*Co.*, 204 Kan. 625, 627, 464 P.2d 281 (1970) (when trial court's decision is based upon alternative grounds, appellant's failure to challenge both grounds "renders unnecessary" a decision on the issue that is raised).

We have chosen, however, to address the issue rather than to dismiss the appeal on this basis. The district court's ruling on timeliness was akin to a jurisdictional ruling, see *In re Estate of Tracy*, 36 Kan. App. 2d 401, 404, 140 P.3d 1045 (2006), and we often review such issues on our own motion. We also find the error here to reflect a fundamental misunderstanding of the procedural framework set out for habeas petitions by inmates under K.S.A. 60-1501(b), an issue worthy of clarification.

*The District Court Should Have Granted Relief to Sauls Because He Was Improperly Denied the Ability to Call Witnesses in His Defense.*

We turn next to the second issue raised in our appeal—whether Sauls' rights were violated when the hearing officer refused to allow him to call several witnesses. The hearing officer in a prison disciplinary case is authorized to call and question witnesses, K.A.R. 44-13-403(l)(1), and the officer in Sauls' case called two witnesses: the corrections officer who filed the charge and Alaina Johnson, a civilian employee of Heatron, Inc., where Sauls was on work assignment. Both witnesses testified by phone.

The reporting officer said that three others—Johnson, Michael Mallotte, and Leanna Jones—had seen Sauls enter a black Honda driven by his daughter outside the Heatron building and then leave the premises. The reporting officer had been told this by another corrections officer. Johnson testified that after others had told her Sauls was missing from work, she saw a black car pull up and stop. She said the car went around the building toward a specific street, then turned around and came back. Johnson said she saw Sauls get out of the car, and she said that Mallotte saw him too.

Sauls asked to call several witnesses, including two other inmates and several Heatron employees, including Mallotte. Sauls proffered that several of the witnesses would testify that they had been outside during the lunchtime period when he was alleged to have

left the premises without permission and that they had not seen Sauls in any car that drove by. Sauls said that Mallotte would testify that he had not seen Sauls in the black Honda that had driven by and that Mallotte had not searched the back side of the Heatron building (where Johnson said she had seen Sauls get out of the car). The hearing officer refused the request to call each of these witnesses, finding that Mallotte was "repetitive to Johnson" and the others were "irrelevant" or "immaterial."

The disciplinary sanction deprived Sauls of property (through the $20 fine), so he was entitled to a minimal level of due process, which includes the opportunity to call witnesses. See *Washington v. Roberts*, 37 Kan. App. 2d 237, 240-41, 152 P.3d 660 (2007). In ruling on an inmate's request to call witnesses, a hearing officer may balance the inmate's need for a witness against prison interests, like keeping the prison safe or avoiding retribution. But prison officials bear a burden of persuasion to show that there is a reasonable basis for overriding the inmate's right to call witnesses. 37 Kan. App. 2d at 243-45; see K.A.R. 44-13-405a.

The hearing officer in Sauls' case did not cite any institutional concerns, like inmate safety, and we do not find persuasive the officer's conclusion that the testimony of all of these witnesses was either duplicative or irrelevant. Only one witness—Johnson—testified that she had personally seen Sauls get out of the car. She also said that Mallotte had seen Sauls get out of the car, but Sauls' proffer was that Mallotte never saw Sauls in the car. Although Sauls had other witnesses who he claimed would have reported not seeing him either generally or in the car while outside the building for lunch, we recognize that their information presents only a negative inference (*i.e.*, that he wasn't there because they didn't see him), while Johnson testified that she positively saw Sauls get out of the car. But in a contested proceeding, we do not believe that the hearing officer should deny the opportunity to present opposing witnesses—solely on the grounds of relevance—only because a single witness has testified on the point.

Sauls apparently sought to defend the charge on the basis that he hadn't gotten into the car and that his daughter had simply

brought his lunch. Testimony that he wasn't seen in the car by anyone other than Johnson would have supported his defense.

We find that Sauls' due-process rights were violated by the denial of the ability to call witnesses who might have rebutted the evidence presented against him. Although this is the denial of a constitutional right, even such an error may be deemed harmless if we can declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the outcome of his disciplinary hearing. *State v. Laturner,* 289 Kan. 727, 753, 218 P.3d 23 (2009). On the limited evidence presented in our record, we cannot do so.

On the record before us, there is no evidence as to where on the Heatron premises Sauls could go during lunchtime. He was charged with aggravated escape from custody under K.S.A. 21-3810; when the inmate is outside prison walls on an authorized basis, like the work-assignment situation involved here, there must at least be some evidence that he went somewhere he was not permitted to go. See *State v. Garrett,* 235 Kan. 768, Syl. ¶ 1, 684 P.2d 413 (1984). It appears from his proffer that other inmates on work assignment were allowed to be on the grounds outside the building during lunchtime. Moreover, Johnson's testimony does not tell us whether the car in which she said Sauls was riding ever actually left the Heatron premises and went onto a city street. We have the hearing officer's notes, not a transcript, and those notes merely cite Johnson saying that the car "went around the building to Wilson Ave.," when it "stopped and . . . turned around" as another car was passing from the opposite direction. Nothing in our record tells us that the car ever even left Heatron's parking lot.

In sum, we find that the hearing process violated Sauls' due-process right to call witnesses, and the Secretary of Corrections has not provided any persuasive basis for the denial of this right. The district court had granted Sauls' writ, which had placed the burden on the Secretary to make that justification in this habeas proceeding. Having failed to do so, we conclude that the disciplinary sanction entered against Sauls must be set aside based on the denial of his due-process rights.

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment in favor of Sauls di-

recting that the Secretary of Corrections set aside the disciplinary sanctions entered against Sauls and provide a new hearing to Sauls consistent with this opinion.[1]

---

[1]**REPORTER'S NOTE:** The original opinion was modified to provide for a new hearing for Sauls.