NOT DESIGNATED FOR PUBLICATION

No. 124,435

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHELBERT SMITH,
*Appellant*,

v.

DAN SCHNURR, Warden,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed August 26, 2022. Reversed and remanded with directions.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Jon D. Graves*, legal counsel, of Kansas Department of Corrections, for appellee.

Before GREEN, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: Shelbert Smith appeals the trial court's dismissal of his habeas corpus petition. A prison disciplinary officer found Smith guilty of possessing contraband. Smith filed this habeas petition under K.S.A. 60-1501, asserting that there was insufficient evidence to convict him and that the hearing officer was not fair and impartial. The trial court held that the hearing officer afforded Smith due process and that some evidence supported the finding of guilt. Because the hearing officer denied Smith due process, we reverse and remand with directions.

FACTS

Smith is an inmate residing in the Hutchinson Correctional Facility in Hutchinson, Kansas. He had a verbal altercation with another inmate, Carl Pierce, over whether the window should be open or closed during the hot July days. Pierce had a phone charger that he wanted to give to another inmate, but the inmate was not around. Pierce needed to get rid of the phone charger before an inspection, so he slipped the charger into a desk drawer with Smith's belongings. Prison officials searched Smith's living area, which he shared with 256 inmates who also had access to his living area. Smith received a disciplinary report for the phone charger found inside one of his socks.

Pierce confessed to his actions, reporting what he did to prison staff. Pierce also wrote out a statement. He presented his statement to the hearing officer before the formal hearing, saying that he intended to have the statement notarized. The hearing officer took Pierce's written statement before Pierce notarized it. The hearing officer told Pierce that he did not need to do anything further. Smith submitted a request to call Pierce as a witness at the hearing, which was approved.

The prison disciplinary hearing was at the Hutchinson Correctional Facility's East Unit in August 2020. At the hearing, Smith explained that he did not know the charger was there until the inspecting officer found it. Smith explained that it was a common area, anyone could have put it there, and he told the hearing officer that Pierce stated that he put it there to get rid of Smith. The hearing officer denied Smith's request to call Pierce as a witness, stating that he already received Pierce's written statement.

The hearing officer continued the hearing to two days later. When the hearing reconvened, the officer told Smith that he reviewed the surveillance video. He observed that, on the day prison staff found the charger, both Smith and Pierce were in their beds that morning up until the search began. When the officers entered the dorm, the footage

showed Smith go to the drawer where the charger was found, put something in, and take something out. Smith again asked to call Pierce as a witness and asked to review the camera footage for himself. Smith explained that Pierce stated that he had put the charger in the drawer "'after their altercation,'" which was the week before the search. The hearing officer denied Smith's requests.

The hearing officer found Smith guilty and fined him $5, which was deducted from his inmate trust account.

Smith filed a habeas corpus petition with the trial court alleging that the hearing officer violated his federal and state constitutional rights and state statutory rights. Smith contended that there was insufficient evidence to convict him of a disciplinary violation and that the hearing officer was not fair and impartial. The State responded and moved to dismiss. The trial court held that there was some evidence to support the conviction and that Smith was not denied due process.

Smith timely appeals.

ANALYSIS

*Does some evidence support Smith's disciplinary conviction?*

Smith argues that the evidence linking him to the contraband phone charger was so lacking that he was denied due process and the hearing fell short of the regulatory standard. Because some evidence supports Smith's conviction of a disciplinary violation, we reject this contention.

Disciplinary decisions concerning inmates in the custody of the State are generally not subject to judicial review. K.S.A. 77-603(c)(2) (exempting discipline of persons in

the custody of the Secretary of Corrections from the Kansas Judicial Review Act). To state a claim for relief under K.S.A. 2021 Supp. 60-1501 and avoid summary dismissal, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49. See K.S.A. 2021 Supp. 60-1503(a). An appellate court exercises de novo review of a summary dismissal. *Johnson*, 289 Kan. at 649.

An appellate court reviews a trial court's decision on a K.S.A. 60-1501 petition to determine whether the trial court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. The trial court's conclusions of law are subject to de novo review. *Rice v. State*, 278 Kan. 309, 320, 95 P.3d 994 (2004).

> "The distinction between K.S.A. 60-1501 and K.S.A. 60-1507 has generally been held to be that a 1507 [motion] is a procedure by which a prisoner may challenge his or her conviction or sentence, while a 1501 petition is a procedural means through which a prisoner may challenge the mode or conditions of his or her confinement, including administrative actions of the penal institution. A 1507 [motion] is properly filed in the sentencing court, while a 1501 petition is properly filed in the county of confinement. [Citations omitted.]" *Safarik v. Bruce*, 20 Kan. App. 2d 61, 66-67, 883 P.2d 1211 (1994).

A challenge to the sufficiency of the evidence in a prison disciplinary proceeding is reviewed for "'some evidence'" to support the correctional tribunal. *May v. Cline*, 304 Kan. 671, 674, 372 P.3d 1242 (2016). Determining whether this standard is satisfied does not require the reviewing court to examine the entire record, make an independent assessment of witness credibility, or reweigh the evidence. The relevant question is whether there is any evidence in the record to support the conclusion reached by the

disciplinary authority. 304 Kan. at 674 (quoting *Sammons v. Simmons*, 267 Kan. 155, Syl. ¶ 3, 976 P.2d 505 [1999]).

In *May*, our Supreme Court held that the inmate was denied due process at a hearing on a disciplinary violation for fighting. 304 Kan. at 677. The inmate disputed whether it was his burden to present evidence that he acted in self-defense. The *May* court held that the disciplinary authority had the burden to prove a lack of self-defense. 304 Kan. at 676. And the *May* court held that the inmate's disciplinary conviction failed the "some evidence" test:

> "When we evaluate the evidence in the record before us in light of a proper understanding of the regulation May was alleged to have violated, we have no difficulty concluding that there was no evidence whatsoever presented to the hearing officer that May did not act in self-defense. The quantum of evidence to support a disciplinary action is slight, but even so, the record here discloses nary a scintilla of evidence on which a reasonable hearing officer could conclude that May was not acting in self-defense. This is hardly surprising given that neither the disciplinary authorities nor the hearing officer believed the regulation demanded such evidence." 304 Kan. at 676-77.

*May* is no longer instructive on self-defense in disciplinary hearings. The regulation governing that issue was substantially amended after *May*. See *Jenkins v. Secretary of Corrections*, No. 122,938, 2020 WL 7271065, at *3 (Kan. App. 2020) (unpublished opinion), *rev. denied* 313 Kan. 1041 (2021). But the *May* court's reasoning is helpful here in our analysis because it illustrates how much evidence is needed. *May* contrasts the "slight" "quantum of evidence" which would support a disciplinary action against the existence (or nonexistence) of "nary a scintilla of evidence" supporting the inmate's conviction. 304 Kan. at 676. Unlike in *May*, where the disciplinary authority did not present any evidence, the hearing officer here based Smith's conviction on some evidence.

Smith argues that the hearing officer's finding is arbitrary because the person who placed the charger in the drawer confessed to putting it there. But this court does not weigh evidence supporting the hearing officer's finding against evidence which might undermine the finding. The standard is whether some evidence supports the hearing officer's finding. The evidence supporting Smith's conviction of a violation includes (1) the sworn statement of the inspecting officer, (2) the physical evidence of the charger in a sock in Smith's drawer, and (3) surveillance video showing Smith accessing the drawer immediately before the officer found the charger. The trial court correctly held that some evidence supported the hearing officer's findings. Thus, Smith is not entitled to relief on this basis.

*Did the hearing officer deny Smith due process?*

Smith argues that the hearing officer denied him due process because he was not allowed to call his witness. Schnurr contends that Smith has abandoned his complaint about not being able to call a witness. Because Smith asserted his right to call a witness at the hearing and in his petition to the trial court, we conclude that he was denied a fundamental due process right and remand for further proceedings.

When the trial court summarily dismisses a habeas claim, it has only reviewed written documents in the court file, and an appellate court is in just as good a position to consider whether summary dismissal was appropriate. *Wahl v. State*, 301 Kan. 610, Syl. ¶ 1, 344 P.3d 385 (2015).

When considering due process violation claims, appellate courts apply a two-step analysis. First, this court determines whether the State has deprived the inmate of life, liberty, or property. If so, the second step is to determine the extent and nature of the process which is due and whether the inmate received this due process. See *Washington v. Roberts*, 37 Kan. App. 2d 237, 240-41, 152 P.3d 660 (2007).

The disciplinary sanction of a $5 fine deprived Smith of property, entitling him to a minimum level of due process, which includes the opportunity to call witnesses. *Sauls v. McKune*, 45 Kan. App. 2d 915, 920, 260 P.3d 95 (2011).

> "In ruling on an inmate's request to call witnesses, a hearing officer may balance the inmate's need for a witness against prison interests, like keeping the prison safe or avoiding retribution. But prison officials bear a burden of persuasion to show that there is a reasonable basis for overriding the inmate's right to call witnesses." 45 Kan. App. 2d at 920.

The record here provides an unclear picture of Smith's right to call a witness. On the one hand, Smith submitted a witness list and the hearing officer approved it. But then Smith's K.S.A. 60-1501 petition alleges that the hearing officer did not allow him to call Pierce as a witness. The hearing officer clearly read Pierce's statement because the decision quotes Pierce's entire statement. But the evidentiary value of that statement is not clear. The record shows that the reporting officer was not sworn in/affirmed to testify. But the officer's notarized testimony was read into the record. The box indicating that the officer was sworn in was unchecked, whereas the box showing that the testimony was read into the record was checked. And Smith was sworn in/affirmed to testify also. The box for witnesses remained unchecked. And Pierce's written statement was not a notarized affidavit.

It is readily apparent that the hearing officer did not view Pierce's written statement as credible, considering the hearing officer's ruling. And it is impossible to know whether the hearing officer would have credited the statement if it was an affidavit. But one thing is clear:  the written statement did not mention precisely when Pierce claimed to put the charger in Smith's drawer. The timing is a vital fact which could have been drawn out on direct or cross-examination. Schnurr's appellate brief complains that the timeline of Pierce putting the charger in the drawer has seemed to shift. According to Schnurr, Smith first alleged that Pierce hid the charger in the drawer the week before the

7

inspection. Then Smith alleged that Pierce hid the charger the day before the inspection. Finally, Smith's story changed to the morning of the inspection. In short, Schnurr complains that the timing of the allegation was not fixed. But cross-examination of Pierce could have pinned down a more definitive timeframe. Thus, Smith's witness would have benefited both sides: Smith would receive his due process rights, and the disciplinary authority could draw out a definitive timeframe, pinning down a specific portion of video for the hearing officer to review. Instead, the hearing officer did not allow Pierce to testify and then reviewed video footage from immediately before the inspection.

Given the failure of the hearing officer to explain in the hearing record why Pierce did not testify, summary dismissal is not proper here: "Prison officials are required, when challenged, to justify why witnesses are not allowed to testify in a prison disciplinary proceeding, either by making the explanation part of the record at the disciplinary hearing or by presenting testimony in court." *Washington*, 37 Kan. App. 2d 237, Syl. ¶ 5. Summary dismissal requires that the failure to state a valid claim for relief be demonstrated by uncontrovertible facts. *Johnson*, 289 Kan. at 648-49. The trial court had no facts to determine on what basis the hearing officer refused Pierce's testimony.

Schnurr claims that Smith waived this due process argument because he did not raise it before the trial court "at all." But Smith did raise it with the trial court because his K.S.A. 60-1501 petition alleged that he was denied his right to call and question his witness.

Schnurr does not argue that even if some due process violation occurred, it should be considered harmless. See *Sauls*, 45 Kan. App. 2d at 921. Instead, Schnurr in his appellate brief argues that Smith received due process, a conclusion that we cannot reach from the present record. Because the hearing officer denied Smith's right to call a witness and because the hearing officer gave no explanation, we reverse the trial court's dismissal.

Smith also argues that he was denied due process because the hearing officer reviewed surveillance video outside his presence. Thus, he claims that he was not present at all critical stages of the process, and he was unable to confront his accuser. But denial of access to video recordings is not axiomatically a due process violation in the way that Smith argues. See *Requena v. Cline*, No. 108,395, 2013 WL 1876471, at *3 (Kan. App. 2013) (unpublished opinion) (holding that the video recording was not used to prove the inmate guilty and the prison safety regulation preventing inmates from reviewing surveillance footage was reasonable). The video here was not Smith's accuser whom he had a right to confront. Nor was video review a critical stage of the process. Although the record shows that the hearing officer viewed a portion of the surveillance tape, we note that he viewed only the recorded video footage immediately before the inspection search occurred. If we are to believe Smith's witness, Pierce, he placed the charger in the drawer in question a week before the search. So, the recorded video viewed by the hearing officer would not necessarily show evidence of Smith's guilt.

Thus, we conclude that the hearing officer did not deny Smith a due process right by reviewing the video outside Smith's presence.

*Did the trial court err by not appointing counsel?*

Smith's final argument in his appellate brief is that the trial court should have appointed counsel because it could not properly dismiss his K.S.A. 60-1501 petition summarily. He is correct. When summary dismissal is improper, the trial court has two remaining options. It can hold a preliminary hearing where the parties might reach stipulations eliminating some or all issues or the need for some or all evidence. Or it can hold an evidentiary hearing to resolve substantial issues. See *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). In either case, the trial court must appoint counsel to represent Smith. K.S.A. 22-4506(b) (requiring appointment of counsel if substantial questions of law or triable issues of fact are presented); *Sola-Morales*, 300 Kan. 875, Syl.

9

¶ 1 (holding that if a potentially substantial issue exists, a preliminary hearing may be held after appointment of counsel).

For the preceding reasons, we reverse the trial court's dismissal and remand for further proceedings consistent with this opinion.

Reversed and remanded with directions.